IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID MEADOWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2209 |
| | § | |
| HARTFORD LIFE INSURANCE | § | |
| COMPANY, HARTFORD LIFE PRIVATE | § | |
| PLACEMENT, L.L.C., THE NEWPORT | § | |
| GROUP, INC., HENRY F. MCCAMISH, | § | |
| JR., MCCAMISH GROUP, L.P., | § | |
| MCCAMISH SYSTEMS, L.L.C., | § | |
| INTEGRATED ADMINISTRATION | § | |
| SERVICES, INC., and IAS | § | |
| DEVELOPMENT CORPORATION, | § | |
| | § | |
| Defendants. | § | |

AMENDED MEMORANDUM AND ORDER

The Court's Memorandum and Order entered April 27, 2006
(Document No. 41) is VACATED, and this Amended Memorandum and Order
is issued in its place.[1]

Pending are Defendants Henry F. McCamish, Jr., McCamish Group,
L.P., McCamish Systems, L.L.C., Integrated Administration Services,
Inc., and IAS Development Corporation's Motion to Dismiss for Lack
of Personal Jurisdiction and Improper Venue (Document No. 11), and

---

[1] Plaintiff moved for partial reconsideration of the
Memorandum and Order entered April 27, 2006 (Document No. 42), and
Defendants filed a Petition for Certification of Interlocutory
Appeal (Document No. 53). After careful study of these
submissions, the Court has determined that reconsideration of the
April 27, 2006, Memorandum & Order is appropriate, the relief
sought by Plaintiff in his motion should be denied, and this
Amended Memorandum & Order should be issued, which also renders
moot Defendants' Petition for Certification of Interlocutory
Appeal.

Defendants Hartford Life Insurance Company, Hartford Private Placement, L.L.C., The Newport Group, Inc., Henry F. McCamish, Jr., McCamish Group, L.P., McCamish Systems, L.L.C., Integrated Administration Services, Inc., and IAS Development Corporation's Motion to Dismiss (Document No. 13). After having carefully considered the motions, responses, replies, and the applicable law, the Court concludes as follows:

## I.  Background

In this diversity suit, Plaintiff David Meadows ("Plaintiff") sues Defendants Hartford Life Insurance Company ("Hartford"), Hartford Private Placement, L.L.C. (collectively, the "Hartford Defendants"), The Newport Group, Inc. ("Newport"), Henry F. McCamish, Jr. ("McCamish"), McCamish Group, L.P. ("MG"), McCamish Systems, L.L.C. ("MS"), Integrated Administration Services, Inc. ("IAS"), and IAS Development Corporation ("IASD") (collectively, "Defendants"), who are the insurance companies, insurance brokers, and policy administrators involved in the issuance and maintenance of a corporate-owned life insurance ("COLI") policy that was purchased on Plaintiff's life by Plaintiff's former employer, Camelot Music, Inc. ("Camelot"), without Plaintiff's knowledge or consent. Plaintiff alleges that Defendants have wrongfully appropriated his personality and right to insure, knowingly

participated in Camelot's breach of fiduciary duty to Plaintiff, and violated the Texas Theft Liability Act.

Plaintiff worked for Camelot from December, 1987, to April, 1995.[2]  In 1990, Camelot bought COLI policies on over one thousand of its "rank and file" employees, including Plaintiff, and named itself as beneficiary of those policies.  To purchase the policies, Camelot disclosed to its insurers and brokers the personal information of its employees, including the employee's name, sex, date of birth, Social Security number, state of residence, and a confirmation that the employee was generally in good health by virtue of being actively at work--all without the employee's knowledge or consent.[3]  *See* Document No. 1 ¶¶ 22, 33.  Camelot purchased the COLI policies from Mutual Benefit Life Insurance Company ("Mutual Benefit"), which then transferred its business to Defendant Hartford.  Plaintiff alleges that Defendant Newport was "primarily responsible for marketing COLI sales to Camelot," and "benefited from commissions and administrative service fees it received."  Id. ¶¶ 21, 24.  Defendants McCamish, MG, MS, IAS, and

---

[2]Camelot filed for bankruptcy in 1996, *see* In re CM Holdings, Inc., 254 B.R. 578, 582 (D. Del. 2000), and is not a defendant in this action.  The parties do not dispute that Camelot's COLI policies, including the COLI policy on Plaintiff's life, appear to have been surrendered.

[3]When an employee insured under a COLI policy died, the benefits due under the policy were paid to Camelot, not to the insured employee's estate.  Document No. 1 ¶ 23.

IASD (collectively, the "McCamish Defendants") developed and administered the COLI insurance policy at issue.[4]

Plaintiff alleges that he did not consent to Camelot's purchase of the policy or to Camelot's designation of itself as policy beneficiary, nor did he consent to Defendants' use of his personal information to create and maintain the COLI policy on his life.  He alleges that all or some Defendants have used Plaintiff's name, Social Security number, and date of birth to conduct "death sweeps" of national and state computerized records "to learn when [Plaintiff] dies."  Id. ¶ 36.  If Plaintiff had died, and his death had been confirmed from these records, his personal information would have been included in a "death claim register" for Hartford to pay Camelot.  Id.  Plaintiff alleges that Defendants have used Plaintiff's personal information on "a variety of forms," including

---

[4]Plaintiff describes McCamish as a "self-proclaimed life insurance entrepreneur, [who] developed a new type of COLI policy to produce maximum cash flow (through interest deductions) for the companies that bought it."  See Document No. 1 ¶ 14.  As to the COLI policy at issue, Plaintiff alleges the following:

> McCamish developed and built Mutual Benefit's COLI business.  McCamish formed three companies to provide administrative and consulting services for the new Mutual Benefit COLI policies: [Defendants] MS, [IAS] and IASD. Mutual Benefit agreed to pay McCamish and/or [IAS] and IASD a flat policy administration fee for every COLI policy sold by Mutual Benefit, as well as a percentage of the annual premiums generated by the policies. . . . The McCamish entities benefited from commissions and service fees.

Id. ¶¶ 17, 24.

minimum payment statements, policy value statements, and cash flow reports.  <u>Id.</u> ¶ 37.  Plaintiff further alleges that Defendants have conveyed Plaintiff's personal information to "many individuals and entities, some still unknown. . . . [which] has exposed him to the distinct possibility of further identity theft."  <u>Id.</u>  As a result, Plaintiff alleges that (1) Defendants have misappropriated and "conver[ted]" his "identity," which he defines as his "name, Social Security Number and date of birth," and his "right to insure his life," by establishing a COLI policy on his life, conducting death sweeps, preparing reports, and administering a COLI policy on his life to generate profits; (2) Defendants are liable for knowing participation in Camelot's alleged breach of fiduciary duty toward Plaintiff; and (3) Defendants violated the Texas Theft Liability Act by appropriating Plaintiff's "intangible personal property right . . . to insure and control who insures his life."  <u>Id.</u> ¶¶ 47-50, 55, 58-59.  Plaintiff seeks nominal, punitive, and actual damages; disgorgement; restitution of the benefits tortiously acquired by Defendants; a permanent injunction; and attorneys' fees, costs, and pre-judgment and post-judgment interest.

The McCamish Defendants now move to dismiss all claims against them on the grounds that (1) the Court lacks personal jurisdiction over the McCamish Defendants; and (2) venue is not proper in the Southern District of Texas.  In addition, all Defendants move

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims asserted against them for failure to state a claim.

## II.   Discussion

A.   McCamish Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

1.   Personal Jurisdiction: Standard of Review

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

Due process requirements for exercising personal jurisdiction over a nonresident have been defined by the United States Supreme Court in a familiar body of case law. Stuart v. Spademan, 772 F.2d 1185, 1189 (5th Cir. 1985). The due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

6

Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945).  "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there.'"  Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 379 (5th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2183 (1985)).  "There must be some act whereby the [nonresident] defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"  Id.

Two types of personal jurisdiction are recognized: (1) specific; and (2) general.  Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984).  "[T]he 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff."  Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987) (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567-68 (1980)).  "The contacts with the forum State must be such that it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'"  Electrosource, 176 F.3d at 872 (quoting World-Wide Volkswagen, 100

S. Ct. at 567).   "Even where a [nonresident] defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." Nuovo Pignone, 310 F.3d at 379. See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993).   When the issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation. See Helicopteros, 104 S. Ct. at 1872.

Alternatively, "when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient 'continuous and systematic contacts' with the forum state to support an exercise of 'general jurisdiction.'" Ruston, 9 F.3d at 419 (quoting Ham v. La Cienega Music Co., 4 F.3d 413, 416 n.10 (5th Cir. 1993)).  See Helicopteros, 104 S. Ct. at 1872-73; Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000).  To make a prima facie showing of general jurisdiction, the plaintiff must produce evidence that affirmatively shows that the defendant's contacts with the forum state that are unrelated to the litigation are sufficient to satisfy due process requirements. See Alpine View, 205 F.3d at 217.   "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was

filed." <u>Access Telecom, Inc. v. MCI Telecomms. Corp.</u>, 197 F.3d 694, 717 (5th Cir. 1999).  Furthermore, the defendant's contacts with the forum must be substantial to warrant the exercise of general jurisdiction.  <u>Alpine View</u>, 205 F.3d at 217; <i>see</i> <u>Submersible Systems, Inc. v. Perforadora Cent., S.A. de C.V.</u>, 249 F.3d 413, 419 (5th Cir. 2001) ("[T]he continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a [non-resident] defendant and a forum.").

When an evidentiary hearing on the question of jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction.  <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 211 (5th Cir. 1999).  The court may decide the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985); <u>Stuart v. Spademan</u>, 772 F.2d 1185, 1192 (5th Cir. 1985). Proof by a preponderance of the evidence is not required.  <u>Kelly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor.  <u>Alpine View</u>, 205 F.3d at 215.

2.   Analysis

The McCamish Defendants argue that they should not be subject
to personal jurisdiction in Texas because they have engaged in only
sporadic business in Texas and have not otherwise established
minimum contacts with the State of Texas.[5]  Plaintiff contends that
the McCamish Defendants have established personal jurisdiction in
Texas because they have (1) conducted business in Texas, and
(2) committed torts in Texas by misappropriating Texans' personal
information.

a.   General Jurisdiction

The Court must first determine whether Plaintiff has met his
prima facie burden of producing evidence that the McCamish
Defendants have maintained substantial, continuous, and systematic
contacts with Texas to support an exercise of general jurisdiction.
See Alpine View, 205 F.3d at 217; Helicopteros, 104 S. Ct. at 1872-
73.  It is uncontroverted that McCamish is a citizen of Georgia,
and that the McCamish entities are Georgia corporations or
partnerships that do not maintain regular places of business in
Texas and that lack registered agents for service of process in

_____

[5]McCamish is the chairman of MG and MS, and he is the
chairman, sole common stock shareholder, and chief operating
officer of IAS and IASD.  See Document No. 37 ex. A at 1, ex. B at
13, 66.  Plaintiff alleges that "McCamish, MG, [IAS], IASD and MS
function as one entity and should be considered such."  Document
No. 1 ¶ 18.

10

Texas.  Plaintiff produces evidence of two Texas contacts that the
McCamish Defendants maintained between 1988 and 1994.  First,
during that time, members of Defendant IAS worked with insurance
brokers located in Texas to issue COLI policies to Texas-based
corporations.[6]  *See* Document No. 37 ex. C at 5.  Second, Plaintiff
asserts that "McCamish personally recruited the brokers who sold
the majority of the COLI products at issue, including various
offices of Management Compensation Group. . . . [which] had offices
all around the nation, including Dallas and Houston, Texas."  *See*
id. at 10; exs. A at 12, B at 21, D.  Plaintiff produces no
evidence, however, that the McCamish Defendants attended any
meetings in Texas, advertised in Texas, performed business services
in Texas, or maintained a physical presence in the State.  *See,*
*e.g.,* Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801,
810 (Tex. 2002) (finding that the lack of these same factors meant
that "the quality of [Defendant]'s contacts [did not] support
general jurisdiction as defined by the United States Supreme

---

[6]Ultimately, two or three Texas corporations purchased COLI
policies from insurance brokers recruited by the McCamish
Defendants, including Fina Oil and Panhandle Eastern.  *See* Document
No. 37 ex. C at 14.  There is no evidence that the McCamish
Defendants directly transacted business with these Texas
corporations.  The only evidence of any communication between the
parties is (1) a "Policy Receipt Confirmation" that was signed by
Fina Oil in November, 1989, and which contained instructions for
bank wiring funds to IAS; and (2) an "Amounts Due" invoice, dated
December, 1990, which instructed Fina Oil to make checks payable to
their insurance agent Mutual Benefit and to mail the checks to IAS
in Georgia.  *See* id. exs. E, F.

Court."). In sum, these limited contacts with Texas, which occurred twelve to sixteen years ago, are not sufficiently substantial, continuous, and systematic to establish general jurisdiction over the McCamish Defendants. *See* Cent. Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003) (general jurisdiction may be asserted "where a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action").

   b.   Specific Jurisdiction

   The next issue is whether Plaintiff's allegations and evidence support specific jurisdiction—that is, whether the McCamish Defendants had purposeful contacts with Texas that have given rise to or are related to Plaintiff's claims. *See* Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001).

   The crux of Plaintiff's jurisdictional argument is Plaintiff's allegation that the McCamish Defendants' conduct in using Plaintiff's personal information to administer the COLI plan has resulted in harm to Plaintiff in Texas. The evidence presented shows that the McCamish Defendants used Plaintiff's name and Social Security number to conduct monthly "death sweeps," which were computerized searches of national and state databases including the Texas Bureau of Vital Statistics "to determine if [Plaintiff] had

12

died" for purposes of administering the COLI policy on his life. *See* Document No. 37 at 12-13 and ex. C at 60; Document No. 1 ¶ 36.[7] This is the McCamish Defendants' only contacts with the State of Texas in connection with Plaintiff's claims, and it is insufficient to confer specific jurisdiction over them.

First, the mere allegation that a non-resident defendant has committed a tort that allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. *See* Singing River Hosp. Sys. v. Swenson, 996 F. Supp. 591, 595 (S.D. Miss. 1998) (quoting Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1079-80 (10th Cir. 1995)). Indeed, "[s]uch a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there." ESAB Group, Inc. v. Centricut, Inc., 126 F. 3d 617, 626 (4th Cir. 1997). Thus, although the allegation that the McCamish Defendants' conduct caused tortious effects in Texas is relevant to the jurisdictional

---

[7]In his deposition, J. Gordon Beckham testified that the McCamish Defendants "[o]n a monthly basis . . . would send a tape to a third-party company [based in California] who would run what we called a sweep, a social security sweep." *See* Document No. 37 ex. C at 21. Plaintiff also alleges that the McCamish Defendants received premium payments from Camelot on Plaintiff's life "every year that [Plaintiff] remained alive for administering the COLI policy on his life." Document No. 37 at 12. It is uncontroverted, however, that Camelot was an Ohio corporation, and Plaintiff presents no evidence that these premium payments were sent from Texas or otherwise arose from the McCamish Defendants' purposeful contacts with Texas.

inquiry, "it must ultimately be accompanied by the [defendant]'s own contacts with [Texas] if jurisdiction over the [defendant] is to be upheld." Id.; see also Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999) ("The foreseeable effects of a tort are to be assessed as part of the defendant's relevant contacts with the forum.  Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.") (internal citations and quotation marks omitted); Allred v. Moore & Patterson, 117 F.3d 278, 286 (5th Cir. 1997) ("[T]he effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.").  The inquiry must therefore focus on what *contacts* the McCamish Defendants had with Texas other than the alleged *effects* of that conduct claimed to have been felt in Texas by Plaintiff.

Here, it is uncontroverted that the COLI policy was not negotiated in Texas.  The McCamish Defendants did business with Newport, a Florida insurance brokerage firm, which in turn marketed the COLI policy to Plaintiff's employer Camelot, an Ohio corporation. *See* Document No. 1 ¶ 21.  Camelot then purchased the COLI policy from Mutual Benefit, a New Jersey corporation, which later transferred its business to Hartford, a Connecticut corporation.  Id. ¶¶ 22-23. Plaintiff argues, however, that the McCamish Defendants "designed the COLI policies specifically for

14

national corporations, [and] knew that the policies would be used
to insure the lives of [Texas] employees," which was akin to
delivering products into the "stream of commerce" with the
knowledge that the products would be used in Texas. *See* Document
No. 37 (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 100 S. Ct.
559, 567 (1980) (holding that jurisdiction may be asserted over a
nonresident defendant when the defendant actually "delivers its
products into the stream of commerce with the expectation they will
be purchased by consumers in the forum state.")).   However, the
stream of commerce theory does not apply here, where the only
"product" at issue was an insurance policy delivered to Camelot in
Ohio, and where there is no allegation that any product was
delivered to Plaintiff in Texas.[8]   Moreover, it is uncontroverted
that the McCamish Defendants did not sell the insurance policy at
issue, but instead provided administrative and policy design
services in Georgia. *See* Document No. 1 ¶¶ 19, 21-22.   The mere
fact that Plaintiff, one of the covered employees under the Ohio-

---

[8]Plaintiff argues that the McCamish Defendants "arranged deals
with Texas employers to buy the policies" and therefore knew that
the COLI policies would be used to insure the lives of Texas
employees. *See* Document No. 37 at 16.   This allegation is more
akin to a general jurisdiction argument than a specific
jurisdiction argument because Plaintiff makes no attempt to link
the McCamish Defendants' contacts with Texas employers to the
instant litigation--which "is a link that specific jurisdiction
requires." *See* <u>Alpine View</u>, 205 F.3d at 216.   The Fifth Circuit
has rejected a party's reliance on the stream-of-commerce theory to
support an assertion of general jurisdiction over a nonresident
defendant. *See* <u>id.</u> (citing <u>Bearry</u>, 818 F.2d at 375)).

purchased Camelot policy, happens to be a Texas resident is insufficient to confer specific jurisdiction under a stream-of-commerce theory. *See, e.g.,* <u>Ham</u>, 4 F.3d at 416 (even where defendants' activities connected them to Texas within the meaning of the stream-of-commerce cases, the contacts were insufficient to support jurisdiction given "at best a highly attenuated relationship" between the litigation and those activities).

In sum, although Plaintiff argues that the McCamish Defendants have effectively reached from Georgia into Texas to commit torts upon a Texas resident, the evidence is that the McCamish Defendants' only "contact" with Texas in connection with Plaintiff's cause of action was the McCamish Defendants' internet searches of publicly available databases, all conducted outside of Texas, to determine if Plaintiff, a Texas resident, had died.  This contact with Texas is the sort of highly "attenuated" contact with Texas that falls short of "purposeful availment of the benefits of the forum state." *See* <u>Allred</u>, 117 F.3d at 286; *see also* <u>Burger King</u>, 105 S. Ct. at 2183.  After careful consideration of the McCamish Defendants' contacts with Texas, the Court finds that it lacks personal jurisdiction over the McCamish Defendants.

16

B.  12(b)(6) Motion to Dismiss[9]

    1.  Standard

    Fed. R. Civ. P. 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  *See* id.

---

    [9]As an initial matter, Defendants argue that Plaintiff lacks standing to invoke the subject matter jurisdiction of this Court because he has not alleged that the actions of Defendants caused him any concrete and particularized injuries.  Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing by demonstrating the "triad of injury in fact, causation, and redressability [which] constitute[ ] the core of Article III's case-or-controversy requirement."  *See* Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1017 (1998).  *See also* Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992) (noting that the injury to plaintiff must be "concrete and particularized" and "actual or imminent").  Here, Plaintiff alleges, *inter alia*, that he was injured when Defendants knowingly participated in Camelot's breach of fiduciary duty to Plaintiff in regard to the unauthorized distribution and use of Plaintiff's personal identity information for Defendants' benefit, which violated Plaintiff's reasonable expectation that this information would be kept private and increased his risk of identity theft. Plaintiff seeks at least nominal damages for this ostensible injury.  At least at this pleading stage, when all inferences are indulged in favor of Plaintiff, his claim will not be dismissed for lack of standing.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Dismissal of a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S. Ct. 99, 102 (1957). "The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests." Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977). Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984). While a court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referred to in and central to the complaint. *See* Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 839 (5th Cir. 2004); Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

2.   <u>Analysis</u>

    a.   <u>Misappropriation of Identity</u>

Plaintiffs first allege that Defendants wrongfully appropriated his identity and his right to insure his life when they established a COLI policy on his life and conducted "death sweeps," prepared reports, and administered the COLI policy to generate profits.[10]   Document No. 1 ¶¶ 48-50.   Under Texas law, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." <u>Matthews v. Wozencraft</u>, 15 F.3d 432, 437 (5th Cir. 1994) (quoting RESTATEMENT (SECOND) OF TORTS [the "Restatement"] § 652C (1977)).   *See also* <u>Kimbrough v. Coca-Cola/USA</u>, 521 S.W.2d 719, 722 (Tex. Civ. App.--Eastland 1975, writ ref'd n.r.e.).   There are three elements to a misappropriation claim under Texas law: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. <u>Matthews</u>, 15 F.3d at 437.

---

[10]All Defendants have moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6).   However, in light of the Court's determination that it lacks personal jurisdiction over the McCamish Defendants, only Newport and the Hartford Defendants remain.

Defendants assert that Plaintiff has failed to meet the first element of this claim because, *inter alia*, Plaintiff has not shown that Defendants appropriated Plaintiff's name or identity. Plaintiff responds that Defendants "took and used his identity" by "issuing a COLI policy on his life and in administering the policy." *See* Document No. 16 at 4, 10.  Under the Restatement, to which Texas looks as the "definitive source of guidance in cases involving invasion of the right of privacy," Moore v. Big Picture Co., 828 F.2d 270, 272 (5th Cir. 1987), an "appropriation" occurs when a defendant "pass[es] himself off as the plaintiff or otherwise seek[s] to obtain for himself the values or benefits of the plaintiff's name or identity." *See* Restatement § 652C cmt. c. Misappropriation most often occurs when a person's name or likeness is used to advertise the defendant's product or when the defendant impersonates a person for gain.  *Cf.* Matthews, 15 F.3d at 437; Restatement § 652C cmt. b illus. 1-6 (six illustrations of how the interest is commonly invaded, all involving advertising, impersonation, or exploitation of a name's reputation and standing).  Unlike the Restatement examples and Texas precedents, in this case Plaintiff alleges only that Defendants used Plaintiff's name and identifying information "to establish a COLI policy on his life and since then to the present to conduct 'death sweeps,' prepare numerous reports, generally maintain and administer the COLI policies and generate profits." *See* Document

20

No. 1 ¶ 48.  The allegations in this case are not of an
"appropriation" by Defendants of Plaintiff's name or likeness to
their own use or benefit in the sense that the term is used,
defined, and illustrated in the Restatement.

Likewise, as Defendants argue, in Texas, "[t]ortious liability
for appropriation of a name or likeness is intended to protect *the
value of an individual's notoriety or skill*."  *See* <u>Matthews</u>, 15
F.3d at 437 (emphasis added) (noting further that "[p]rotecting
one's name or likeness from misappropriation is socially beneficial
because it encourages people to develop special skills . . .").
"The misappropriation tort does not protect one's name *per se*;
rather, it protects the value associated with that name."  <u>Id.</u>
Accordingly, "[t]he value of one's likeness is not appropriated
when it is published for purposes other than taking advantage of
his reputation, prestige, or other value associated with him, for
purposes of publicity."  <u>Id.</u> (quoting Restatement § 652C cmt. d)
(quotations omitted).  Here, Plaintiff does not allege that his
name is associated with any special skill that would impart value
to another, or that Defendants "cash[ed] in" on any goodwill
associated with his name, as is required to state a claim for
misappropriation under Texas law.[11]  *See* <u>id.</u>  In sum, Plaintiff can

_____

[11]Plaintiff asserts that his identity "clearly had value"
because "the insurance policy on his life would not have existed
without him and his personal information."  *See* Document No. 16 at
10.  This allegation is not the sort of "value" contemplated by the
tort of misappropriation of name or likeness, which, under Texas

prove no set of facts to show that Defendants Hartford and Newport wrongfully appropriated Plaintiff's identity, and this claim will therefore be dismissed.

      b.   <u>Knowing Participation in Breach of Fiduciary Duty</u>

Plaintiffs allege that Defendants knowingly participated in Camelot's breach of fiduciary duty with respect to misusing Plaintiff's personal information.  In Texas, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." <u>Kinzbach Tool Co. v. Corbett-Wallace Corp.</u>, 160 S.W.2d 509, 514 (Tex. 1942). *See* <u>Hendricks v. Thornton</u>, 973 S.W.2d 348, 372 (Tex. App.--Beaumont 1998, pet. denied) (recognizing a cause of action for "aiding and abetting a breach of fiduciary duty of another"), *superseded by statute on other grounds as recognized in* <u>Rice v. Louis A. Williams & Assocs., Inc.</u>, 86 S.W.3d 329, 333-34 (Tex. App.--Texarkana 2002, pet. denied).  To state a claim for knowing participation in a breach of fiduciary duty, a plaintiff must allege the following: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was

---

law, is "intended to protect the value of an individual's *notoriety or skill*." *See* <u>Matthews</u>, 15 F.3d at 437 (emphasis added).  In this respect Texas law is more restrictive than that of Oklahoma. *Cf.* <u>Lewis v. Wal-Mart Stores, Inc.</u>, No. 02 CV 0944CVE-FHM, 2005 WL 3263377, at *21-22 (N.D. Okla. Dec. 1, 2005).

participating in the breach of that fiduciary relationship.  *See* Cox Tex. Newspapers, L.P. v. Wooten, 59 S.W.3d 717, 722 (Tex. App.--Austin 2001, pet. denied).

Defendants argue that Plaintiff has failed to state a claim because he cannot show that his employer, Camelot, owed its employees a fiduciary duty to keep their private identity information confidential.  Defendants assert that no Texas case has held that an employer owes a fiduciary duty to its employees, and Plaintiff does not dispute this contention.  Rather, Plaintiff asserts that a "confidential relationship" was created when Plaintiff gave "his confidential information to [Camelot] with the expectation that it be kept confidential."  *See* Document No. 60 at 6, 9.  Defendants argue that even if a confidential relationship principle could create an exception to the general rule in Texas that employers owe no fiduciary duties to their employees, Plaintiff has alleged no facts to support the existence of a confidential relationship.  On reconsideration, the Court finds that this analysis is correct.

A "confidential relationship" under Texas law is an informal fiduciary relationship that may arise "where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one."  *See* Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997).  Such a relationship, which is not created lightly, id. at 177, exists where influence

has been acquired and abused, and confidence has been reposed and betrayed.  *See* Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute as stated in* Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 225-26 (Tex. 2002).  Although the existence of a confidential relationship is usually a question of fact, "when the issue is one of no evidence, it becomes a question of law."  Id. Confidential relationships may arise when the parties have "dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest."  Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998).  A person is justified in placing confidence in the belief that another party will act in his best interest only when he is "accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship."  Hoggett v. Brown, 971 S.W.2d 472, 488 (Tex. App.--Houston [14th Dist.] 1997, rev. denied).  Even a cordial relationship of long duration does not necessarily mean that it is a confidential relationship.  Id. Moreover, to impose a confidential relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit.  Schlumberger, 959 S.W.2d at 177.  *See also* Hoggett, 971 S.W.2d at 488 (noting that

"something apart from the transaction between the parties is required.").

Plaintiff, who pleads that he was employed by Camelot from December 1987 to April 1995, and is representative of more than 1,400 "rank and file" Camelot employees, alleges that as one of those employees he provided Camelot with access to his private identity information, and that he "reasonably expected" that Camelot would use this information solely for employment purposes, such as taxes. *See* Document No. 1 ¶¶ 23, 27, 53. Plaintiff claims, "Camelot owed [Plaintiff] a fiduciary duty to keep his name, Social Security number and date of birth private," and it violated its fiduciary duty "when it disclosed [Meadow]'s name, Social Security number and date of birth to the defendants to purchase and maintain COLI." Id. ¶ 54. These allegations are wholly insufficient to support the existence of a confidential relationship between Plaintiff and Camelot from which a fiduciary duty could be implied under Texas law. He never alleges that he was "accustomed to being guided by the judgment or advice" of his employer, or that he and his employer had "a long association in a business relationship, as well as personal friendship," or any other equivalent personal, trusted, and longstanding relationship. *See, e.g.,* Hoggett, 971 S.W.2d at 488; Dominquez v. Brackey Enters., Inc., 756 S.W.2d 788, 791-92 (Tex. App.--El Paso 1988, writ denied). Moreover, Plaintiff does not allege that he shared

25

any prior relationship whatever with Camelot, much less an established confidential relationship, before he disclosed his private identity information.   Plaintiff alleges only that he "expected" that Camelot would confine its use of his confidential information to those purposes intended by the employment relationship.   This is not enough.   *Cf.* Hodgett, 971 S.W.2d at 488 (mere subjective trust and expectation of confidence does not alone create a fiduciary duty).   Taking his well-pleaded allegations as true, Plaintiff has failed to allege facts to support the existence of an established confidential relationship between Plaintiff and Camelot that even arguably could give rise to a fiduciary duty on the part of Camelot under Texas law.   As such, Plaintiff's knowing participation in a breach of fiduciary duty claim against Defendants will be dismissed.

        c.   <u>Texas Theft Liability Act</u>

        Plaintiff next alleges that Defendants violated the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001, *et seq.* (Vernon 1997 & Supp. 2004), by "appropriat[ing] [Plaintiff]'s intangible personal property right to insure his life."   Document No. 1 ¶ 58.   Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft," and it defines theft in reference to a number of Texas Penal Code sections.   <u>Id.</u> §§ 134.002(2), 134.003(a).   The Texas Penal Code

provides that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a).[12]   Under the Code, to "deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner."   Id. § 31.01(2)(A).   Thus, to state a claim under the TTLA, Plaintiff must allege that: (1) Defendants acquired or otherwise exercised control over property belonging to Plaintiff; (2) Defendants intended to withhold the property from Plaintiff permanently or for an extended period of time; and (3) Plaintiff was thereby damaged.

Plaintiff alleges that Defendants appropriated his intangible personal property right to determine who insures his life by insuring Plaintiff's life without Plaintiff's consent.   Document No. 1 ¶¶ 58-59.   However, as Defendants assert, Plaintiff's Complaint alleges that *Camelot* made the determination to procure a COLI policy insuring Plaintiff's life, *see* id. ¶¶ 22-23, and under

---

[12]Under this chapter, to "appropriate" means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B).   "Property" includes both "tangible or intangible personal property."   Id. § 31.01(5)(B). Insurance policies and insurance coverage rights are considered intangible property in Texas.   *See* Adams v. Great Am. Lloyd's Ins. Co., 891 S.W.2d 769, 772 (Tex. App.--Austin 1995, no writ) (citing TEX. TAX CODE ANN. § 1.04(6) (West 1992) (classifying insurance policies as intangible property).   *See also* Brown v. Lee, 371 S.W.2d 694, 696 (Tex. 1963); Seaman v. Seaman, 756 S.W.2d 56, 58 (Tex. App.--Texarkana 1988, no writ); Carter v. Massey, 668 S.W.2d 450, 452 (Tex. App.--Dallas 1984, no writ).

these facts, Camelot was the party that potentially (1) acquired control over Plaintiff's right to determine who insures his life, (2) with the intent to deprive him of that right. Indeed, "nothing Defendants did in connection with the provision of services to Camelot prevented Plaintiff from exercising his supposed right to determine who could insure his life . . ." *See* Document No. 28 at 13.[13]  Taking the well-pleaded allegations as true, Plaintiff has failed to allege that Defendants appropriated Plaintiff's right to determine who insures his life for purposes of the TTLA.[14] Plaintiff's Texas Theft Liability Act claim will therefore be dismissed.

---

[13]In his Response, Plaintiff argues that Defendants "took [Plaintiff's] opportunity" to "assign[ ] a life insurance policy on his life to Camelot for consideration." *See* Document No. 16 at 17 (citing TEX. INS. CODE § 1103.055, which allows an individual insured under a life insurance policy to "transfer or assign" the policy or an interest in the policy to a legal entity).  However, as Defendants argue, Defendants' provision of services to Camelot under the COLI policy did not prevent Plaintiff from deciding to "insure his life and then deciding to assign a life insurance policy to Camelot for consideration." *See* Document No. 28 at 13.

[14]Moreover, Plaintiff has failed to allege that he suffered any damages that the statute was designed to remedy.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.005 (noting that a person who "sustain[s] damages resulting from theft may recover," *inter alia*, actual damages under the TTLA).  Although Plaintiff alleges that Camelot paid premiums in exchange for a COLI policy on Plaintiff's life, he fails to identify any loss or expense he incurred as a result of this conduct.

    d.   <u>Civil Conspiracy</u>

Plaintiff asserts civil conspiracy claims against the Defendants, arguing that they unlawfully agreed "to market, write, maintain and service unlawful COLI on Texans." *See* Document No. 1 ¶ 45.  The parties agree that, in Texas, liability for civil conspiracy is predicated upon the commission of an underlying tort. *See, e.g.,* <u>Tilton v. Marshall</u>, 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."); <u>Narasirisinlapa v. SBC Commc'ns, Inc.</u>, No. Civ.A. 305CV001M, 2006 WL 832509, at *7 (N.D. Tex. Mar. 29, 2006) (Lynn, J.). ("To survive a motion to dismiss on any conspiracy claims, Plaintiff's pleading must contain underlying torts which survive dismissal."); <u>Berry v. Lee</u>, 428 F. Supp. 2d 546, 561-62 (N.D. Tex. 2006) (Fitzwater, J.) (same).  Because Plaintiff has failed to state a cause of action for any underlying substantive torts on which to base his conspiracy claim, Plaintiff's civil conspiracy claims will be dismissed.

### III.  <u>Order</u>

Based on the foregoing, it is hereby

ORDERED that Defendants Henry F. McCamish, Jr., McCamish Group, L.P., McCamish Systems, L.L.C., Integrated Administration Services, Inc., and IAS Development Corporation's Motion to Dismiss

for Lack of Personal Jurisdiction and Improper Venue (Document No. 11) is GRANTED, and the foregoing McCamish Defendants are DISMISSED for lack of jurisdiction.  It is further

ORDERED that Defendants' Motion to Dismiss (Document No. 13) is GRANTED, and all of Plaintiff's claims against the remaining Defendants Hartford Life Insurance Company, Hartford Private Placement, L.L.C., and The Newport Group, Inc. are DISMISSED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 10th day of August, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE